# United States Tax Court

161 T.C. No. 10

LIBERTY GLOBAL, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 341-21.                    Filed November 8, 2023.

————

At the beginning of 2010, P had an overall foreign loss (OFL) account balance of approximately $474 million. That year, P sold all its stock in a controlled foreign corporation (CFC), realizing gain of more than $3.25 billion.

On its 2010 return, P reported approximately $438 million of the gain as dividend income pursuant to I.R.C. § 1248 and approximately $2.8 billion as foreign-source income, taking the view that Treas. Reg. § 1.904(f)-2(d)(1) required this result. The increased foreign-source income allowed P to claim foreign tax credits of more than $240 million for the year.

R examined P's 2010 return and eventually issued a Notice of Deficiency determining that P overstated its foreign-source income for the year and consequently overstated its foreign tax credit.

P timely petitioned our Court for redetermination of the deficiency. The case is before us for decision under Rule 122. The parties agree that I.R.C. § 904(f)(3) applied to P's sale of CFC stock. Furthermore, they agree that I.R.C. § 904(f)(3)(A) recaptured P's OFL through the recognition of gain in an amount equal to P's OFL

**Served 11/08/23**

($474 million) and recharacterization of that amount as foreign-source income. But they disagree regarding the implications of I.R.C. § 904(f)(3) for P's gain beyond the amount needed to accomplish its OFL recapture.

P contends that I.R.C. § 904(f)(3)(A), when applicable, is the only mechanism for recognizing gain from the disposition of CFC stock, overriding all other recognition provisions in chapter 1 of the Internal Revenue Code. As a result, P claims that it was not required to recognize any gain that exceeded what was necessary to recapture its OFL balance. Alternatively, P argues that I.R.C. § 904(f)(3)(A) is ambiguous and that Treas. Reg. § 1.904(f)-2(d)(1) requires treating the gain as foreign-source income. Further in the alternative, P elects to deduct its foreign taxes under I.R.C. § 164(a)(3).

R maintains that I.R.C. § 904(f)(3)(A) does not govern the treatment of the remaining $2.8 billion in gain, which is instead subject to the rules of I.R.C. §§ 865, 1001, and 1248. R disagrees that I.R.C. § 904(f)(3)(A) is ambiguous and also disagrees with P's reading of Treas. Reg. § 1.904(f)-2(d)(1). R agrees, however, that P is entitled to elect to deduct its foreign taxes under I.R.C. § 164(a)(3).

*Held*: I.R.C. § 904(f)(3)(A) speaks only to the gain necessary to recapture the OFL, and no more.

*Held, further*, I.R.C. § 904(f)(3)(A) does not override any recognition provisions under chapter 1.

*Held, further*, I.R.C. § 904(f)(3)(A) is not ambiguous and does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, Treas. Reg. § 1.904(f)-2(d)(1) does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, for 2010, P may deduct its foreign taxes under I.R.C. § 164(a)(3).

————

*Rajiv Madan* and *Nathan P. Wacker*, for petitioner.

*Matthew J. Avon* and *Timothy L. Smith*, for respondent.

OPINION

TORO, *Judge*: This deficiency case calls on us to confront an issue of first impression regarding the scope of section 904(f)(3).[1] As relevant here, that provision governs the recapture[2] of an overall foreign loss (OFL) (a concept we discuss in detail below in Discussion Part I.C), when a taxpayer disposes of shares of stock in a controlled foreign corporation (CFC) in certain types of transactions. The parties offer competing interpretations of the statute.

Petitioner, Liberty Global, Inc., the successor to Liberty Global, Inc., and Liberty Global, Inc. & Subsidiaries (collectively, Liberty Global), maintains that section 904(f)(3) not only operates to recapture its 2010 OFL beginning account balance of some $474 million, but also exempts from U.S. taxation altogether some $2.8 billion of the gain Liberty Global realized (and ordinarily would recognize) when disposing of the stock of one of its CFCs. Alternatively, Liberty Global maintains that section 904(f)(3) coupled with Treasury Regulation § 1.904(f)-2(d)(1) operates to convert more than $2.8 billion from U.S.-source income to foreign-source income, increasing Liberty Global's foreign tax credit by more than $240 million and offsetting its federal income tax liability accordingly.

The Commissioner of Internal Revenue counters that section 904(f)(3) and the relevant regulations have a much more modest scope. In his view, they serve to recapture Liberty Global's OFL of about

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In tax parlance, the term "recapture" typically refers to a scenario where a taxpayer has received a tax benefit in a prior year and circumstances change such that, in the current year, the taxpayer is required to "recapture"—i.e., give back—that benefit.

$474 million, but otherwise neither exempt from taxation the remaining portion of Liberty Global's gain nor change its source.

As we explain below, the text of the relevant statutory and regulatory provisions, the structure of the Code, and policy considerations all favor the Commissioner's interpretation.[3]

## *Background*

The parties submitted this case fully stipulated under Rule 122. The facts below are based on the pleadings and the parties' Stipulation of Facts (including the Exhibits attached thereto). The parties' Stipulation of Facts with the accompanying Exhibits is incorporated herein by this reference.

Liberty Global is a Delaware corporation with its principal place of business in Colorado. It is the ultimate U.S. parent company, and the direct or indirect owner, of an affiliated group of U.S. and foreign corporations. Liberty Global, together with its affiliates, operated converged video, broadband, and communications businesses during 2010.

In January 2010, Liberty Global indirectly owned more than 50% of the voting interests in Jupiter Telecommunications Co. Ltd. (J:COM), a Japanese entity, making J:COM a CFC, as defined in section 957, for 2010.[4] In a series of transactions that took place on February 18, 2010, Liberty Global's interests in J:COM were transferred to an unaffiliated foreign corporation for $3,961,608,988 in a transaction treated as a sale for U.S. federal income tax purposes.[5] Liberty Global did not own any stock in J:COM following the sale.

---

[3] In the event the Court agrees with the Commissioner on the primary issues in the case, Liberty Global elects to deduct its foreign taxes under section 164(a)(3) for one of the years at issue. The Commissioner does not dispute that Liberty Global may do so. Given our disposition, Liberty Global's election shall be taken into account when the parties prepare the computations under Rule 155.

[4] Liberty Global indirectly owned and eventually disposed of the J:COM stock through a complex network of affiliates. Because this organizational structure does not affect our analysis, we do not discuss it further.

[5] To simplify our discussion, we refer to these transactions collectively as Liberty Global's sale of the stock of J:COM, even though Liberty Global transferred its ownership interests in J:COM in transactions involving various indirectly owned entities.

Liberty Global timely filed its 2010 U.S. consolidated income tax return. That return reported recognized gain of $3,256,557,143 from the sale of the J:COM stock and showed a beginning balance of $474,372,166 for Liberty Global's general limitation category OFL account. Liberty Global characterized $438,135,179 of the gain as dividend income pursuant to section 1248 and the remaining $2,818,421,964 as capital gain. It treated the capital gain as foreign-source income.

Liberty Global attached to its 2010 return Schedule UTP (Form 1120), Uncertain Tax Position Statement. The Schedule UTP stated as follows:

> [Liberty Global] entered into a transaction to sell its entire interest in its Japanese subsidiary, [J:COM], during the year. [Liberty Global] recognized a gain on the sale and due to recharacterization of the gain also recognized deemed section 902 credits as part of the overall transaction. The issues are the application of the rules under section 904 to the transaction and whether the amount of the foreign tax credit taken as a result of the transaction is appropriate.

The Commissioner examined Liberty Global's 2010 return and issued a Notice of Deficiency, in which he determined a deficiency of $241,791,309. In relevant part, the Commissioner determined that Liberty Global overstated its foreign-source income and was not entitled to any foreign tax credit for the year. The Notice of Deficiency explained the determination as follows:

> It is determined that no foreign tax credit is allowed due to adjustments affecting foreign source income. The amount of U.S. source gain that is recharacterized as foreign source under [I.R.C. §] 904(f)(3) is limited to the amount necessary to recapture of the Overall Foreign Losses ("OFLs") in the OFL account at the beginning of the year. . . . [Y]our foreign tax credit allowed for [the] tax year ended December 31, 2010 is $0.00 rather than . . . $241,791,309.00.

Liberty Global timely petitioned our Court for redetermination of the deficiency.[6]

*Discussion*

I.    *The Foreign Tax Credit*

A.    *General Principles*

The United States generally taxes the worldwide income of its citizens and domestic corporations. *See, e.g., Cook v. Tait*, 265 U.S. 47, 56 (1924); *Huff v. Commissioner*, 135 T.C. 222, 230 (2010). This policy choice creates the potential for double taxation—that is, the taxation of the same income by both the United States and another country. *See AptarGroup Inc. v. Commissioner*, 158 T.C. 110, 112 (2022). To address the risk of double taxation, the Code allows U.S. citizens and domestic corporations to elect to claim a credit for income tax paid to a foreign country. I.R.C. § 901(a); *see also Am. Chicle Co. v. United States*, 316 U.S. 450, 451 (1942). A domestic corporation may also claim a credit for a tax that it is deemed to have paid or accrued. I.R.C. § 960; *AptarGroup Inc.*, 158 T.C. at 112.

For almost as long as the foreign tax credit has been part of the U.S. tax system, Congress has expressed concern that the foreign tax credit might be misused to reduce U.S. tax due on U.S.-source income. *See* Dirk J.J. Suringa, *The Foreign Tax Credit Limitation Under Section 904* (Section 904 Portfolio), 6060-1st Tax Mgmt. (BNA) at III (setting out an abbreviated history of the foreign tax credit and highlighting Congress's addition of limitations on the credit); *see also* 1 Joel D. Kuntz & Robert J. Peroni, *U.S. International Taxation* ¶ B4.16[1], at B4-185–86 (2022). Several Code provisions address this concern, chief among them, section 904. *See AptarGroup Inc.*, 158 T.C. at 112 (citing *Theo. H. Davies & Co. v. Commissioner*, 75 T.C. 443, 446 n.9 (1980), *aff'd per curiam*, 678 F.2d 1367 (9th Cir. 1982)).

---

[6] The Commissioner also issued to Liberty Global a Notice of Deficiency for 2014, and Liberty Global timely sought redetermination of that deficiency. Because the Commissioner's determination concerning 2014 flows directly from his determination with respect to 2010, we do not discuss it separately.

B.    *Section 904(a)—The Foreign Tax Credit Limitation*

The principal rule in section 904 appears at subsection (a), which provides as follows:

The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

We have previously expressed the limitation set out in section 904(a) as an equation:

$$\text{Maximum credit} = \frac{\text{Taxable income from without U.S.}}{\text{Worldwide taxable income}} \times \text{U.S. tentative tax}$$

*Theo. H. Davies & Co.*, 75 T.C. at 444. As the formula makes clear, the amount of taxable income from sources without the United States (also known as foreign-source income) is a key driver of the section 904(a) limitation. All else being equal, the higher the foreign-source income, the higher the foreign tax credit a taxpayer may be entitled to take.

C.    *Section 904(f)—OFL Recapture*

The provision at the core of this case—section 904(f)—also sets out rules intended to protect the right of the United States to impose U.S. tax on U.S.-source income. Some background may be helpful to understand how section 904(f) operates and the potential issues an OFL presents. We find it easiest to provide that background through an example.

1.    *The OFL Problem*

Imagine that USCo, a U.S. corporation with existing U.S. operations, opens a branch in Country A at the beginning of Year 1.[7] Now assume that, by the end of Year 1, USCo's U.S. operations generate taxable income of $300 (or, in tax parlance, $300 of U.S.-source

---

[7] Generally speaking, a branch is a division of a business within a corporation. *See Dover Corp. & Subs. v. Commissioner*, 122 T.C. 324, 351 (2004). As relevant here, the U.S. tax system generally requires that a U.S. parent include in its taxable income the profits earned by its foreign branches. *See Columbian Rope Co. v. Commissioner*, 42 T.C. 800, 817 (1964).

income), while the branch's operations result in a loss of $100. Assuming that USCo has no other foreign operations, the $100 loss comprises its OFL for the year. *See* I.R.C. § 904(f)(2) (generally providing that an OFL exists when a taxpayer's gross foreign-source income for the year is less than the deductions properly apportioned or allocated to that income).

Under our regime of worldwide taxation, USCo must report in its Year 1 U.S. federal income tax return both the income from its operations in the United States and the loss from the branch's operations in Country A. Thus, USCo's overall taxable income for Year 1 would be $200 ($300 U.S.-source income less the $100 foreign-source loss). Assuming a tax rate of 35%, USCo's Year 1 return would show $70 of tax due ($200 taxable income × 35%).

Imagine further that in Year 2 USCo's U.S. operations again generate U.S.-source income of $300, but this time the branch's operations turn profitable, generating foreign-source income of $100. Once again, under our regime of worldwide taxation, USCo must report in its Year 2 return the results of its U.S. and Country A operations, and its overall taxable income would be $400 ($300 U.S.-source income plus $100 foreign-source income). Assuming a tax rate of 35%, one would expect USCo's Year 2 return to show $140 of tax due ($400 taxable income × 35%).

Here is where the foreign tax credit may complicate things. Assume that, under Country A's rules, USCo's branch is not permitted to use prior year losses to offset current year income and that Country A imposes a 35% tax on income from Country A sources. Under these rules, the branch would be required to pay to Country A $35 of tax for Year 2 ($100 of Country A source income × the 35% Country A tax rate). If the usual foreign tax credit rules were applied without modification for Year 2, under the section 904(a) formula discussed above, USCo would be allowed a foreign tax credit of $35, computed as follows: Taxable income from without the United States (i.e., foreign-source income) ($100) / worldwide income ($400) × U.S. tentative tax ($140) = Maximum credit of $35. Thus, taking into account the foreign tax credit, USCo would be required to pay only $105 in U.S. tax for Year 2 (U.S. tentative tax of $140 less $35 foreign tax credit).

Considering the two years together, we notice that USCo earned $600 in U.S.-source income ($300 in each year) and no income from the Country A branch (the $100 income in Year 2 is offset by the $100 loss

in Year 1).  Given these results, one would have expected USCo to have paid $210 in U.S. tax ($600 × 35%) and no tax in Country A.  But, as the example shows, the combined effect of (a) Country A's decision not to permit branch losses to be carried forward and offset future income and (b) the ordinary application of section 904(a) would lead to the United States collecting only $175 in tax ($70 in Year 1 and $105 in Year 2), while Country A would collect $35 in tax (all in Year 2).

Congress did not believe this outcome to be consistent with the objectives of the foreign tax credit, *see Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 322–23 (1981) (citing Staff of J. Comm. on Tax'n, 94th Cong., General Explanation of the Tax Reform Act of 1976, at 236 (J. Comm. Print), *as reprinted in* 1976-3 C.B. (Vol. 2) 1, 248; S. Rep. No. 94-938, at 236 (1976), *as reprinted in* 1976-3 C.B. (Vol. 3) 248, 274); Section 904 Portfolio at III.J.2; James P. Fuller & Robert Feinschreiber, *The New Foreign Tax Credit Rules: Analysis and Planning*, 3 Int'l Tax J. 393, 394 (1977), and in 1976 added a new section 904(f) to address the issue, *see* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1032(a), 90 Stat. 1520, 1624–25; *Hershey Foods Corp.*, 76 T.C. at 322; Section 904 Portfolio at III.J.2.  As relevant here, Congress proceeded in two steps.

2.      *Section  904(f)(1)—OFL  Recapture  from  Future Income*

First, in section 904(f)(1), Congress addressed the fact pattern illustrated by the example—a taxpayer that earns foreign-source income after having incurred a foreign-source loss that previously offset U.S.-source income (i.e., an OFL).[8]  *See Hershey Foods Corp.*, 76 T.C.

---

[8] In 2010, section 904(f)(1) read as follows:

(1) General rule.—For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,

shall be treated as income from sources within the United States (and not as income from sources without the United States).

at 322–23.  Section 904(f)(1) requires such taxpayers to recharacterize, for purposes of determining their foreign tax credit, some or all of the foreign-source income as U.S.-source.  This resourcing reduces the amount reflected in the numerator of the section 904(a) formula, thus reducing the foreign tax credit available to the taxpayer.  Put another way, section 904(f)(1) recaptures the prior benefit of permitting USCo to offset its U.S. income with the foreign-source loss, so that "when the year(s) of excess loss and the year(s) of recharacterization are viewed together, U.S. source income will bear its full tax share."  *See Hershey Foods Corp.*, 76 T.C. at 323.[9]

Congress recognized, though, that a taxpayer might dispose of the assets used in its foreign operations before an OFL had been fully recaptured.  *See id.*  The disposition of those assets would leave the mechanism reflected in section 904(f)(1) ineffectual as the taxpayer would no longer have any foreign-source income that might be recharacterized as U.S.-source.

### 3. *Section 904(f)(3)—OFL Recapture from Asset Dispositions*

That led Congress to its second step:  adding rules that govern the disposition of assets used in foreign operations in section 904(f)(3).  The provision "accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss."  *Hershey Foods Corp.*, 76 T.C. at 323; *see also* Harvey P. Dale, *The Reformed Foreign Tax Credit: A Path Through the Maze*, 33 Tax L. Rev. 175, 217 (1978) ("[Section 904(f)(3)'s] evident purpose is to prevent avoidance of [section 904(f)(1)'s] rule by transfer or abandonment of a business which is pregnant with OFL recapture.").

Following passage of the Tax Reform Act of 1976, section 904(f)(3)(A) read in relevant part:

---

With exceptions not pertinent to our discussion, section 904(f)(2) defined the term "overall foreign loss" to mean "the amount by which the gross income for the taxable year from sources without the United States . . . for such year is exceeded by the sum of deductions properly apportioned or allocated thereto."

[9] To maintain fairness, section 904(g) now includes similar rules allowing taxpayers to recapture "overall domestic losses" that limited the availability of foreign tax credits in prior years.

In general.—For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

(i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year, and

(ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent".[10]

In 2004, Congress amended section 904(f)(3) to cover certain dispositions of stock in a CFC.[11] *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 895, 118 Stat. 1418, 1647; I.R.C. § 904(f)(3)(D). That amendment made section 904(f)(3) applicable to Liberty Global's sale of J:COM stock in 2010, giving rise to the dispute before us.

---

[10] Section 904(f)(3)(B)(i) provides that "[f]or purposes of this subsection, the term 'disposition' includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer." Under section 904(f)(3)(B)(ii), "[a]ny taxable income recognized solely by reason of subparagraph (A) shall have the same characterization it would have had if the taxpayer had sold or exchanged the property."

[11] As relevant to our discussion, in 2010, section 904(f)(3)(D) read as follows:

(i) In general.—This paragraph shall apply to an applicable disposition in the same manner as if it were a disposition of property described in subparagraph (A) . . . .

(ii) Applicable disposition.—For purposes of clause (i), the term "applicable disposition" means any disposition of any share of stock in a controlled foreign corporation in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the controlled foreign corporation.

II.     *Application of Section 904(f) to the Sale of J:COM Stock*

The parties agree on many of the issues in this case.  They agree, for example, that Liberty Global realized gain of more than $3.25 billion on its sale of J:COM stock.  They further agree that, absent section 904(f)(3), the Code's normal rules would require the gain to be fully recognized under section 1001, would treat the gain as U.S.-source income under section 865, and would recharacterize approximately $438 million of the gain as dividend income under section 1248.

Even regarding the application of section 904(f)(3), the parties agree on a great deal.  They agree that Liberty Global's sale of J:COM stock was a qualifying disposition under section 904(f)(3)(D) and therefore that section 904(f)(3)(A) applied to recharacterize at least a portion of the gain from that transaction.  They further agree that section 904(f)(3) operated as intended to the extent of Liberty Global's beginning OFL balance of $474,372,166—i.e., that the provision recaptured the OFL by (1) recharacterizing $474,372,166 of gain from the J:COM stock sale as foreign-source income, *see* I.R.C. § 904(f)(3)(A)(i), and (2) applying paragraph 904(f)(1) with respect to that income, substituting 100% for 50%, *see* I.R.C. § 904(f)(3)(A)(ii).

Where the parties diverge is on the implications of section 904(f)(3) for Liberty Global's remaining gain—in other words, gain beyond the amount needed to accomplish the OFL recapture.

According to the Commissioner, section 904(f)(3) has no further implications.  Once it recaptures the outstanding OFL, its work is done and it does not affect the balance of a taxpayer's gain.  Instead, the remaining gain is taxed under other Code provisions, which in this case require the gain to be fully recognized (section 1001), to some extent recharacterized (section 1248), and treated as U.S.-source income (section 865).

Liberty Global, on the other hand, says that section 904(f)(3) does a great deal more than recapture the beginning balance of its OFL account, offering two competing interpretations.  First, Liberty Global contends that, when section 904(f)(3) applies, it is the only mechanism for recognizing gain from a transaction, overriding section 1001 and any other gain recognition provisions in chapter 1 of the Code.  As a result, Liberty Global says it was not required to recognize any gain on its sale of J:COM stock beyond the $474,372,166 needed to recapture its OFL.  In other words, Liberty Global's first argument is that section 904(f)(3)

completely exempted its remaining $2.8 billion of gain from U.S. federal income tax.[12]

Second, in the event we disagree with this outcome, Liberty Global argues that section 904(f)(3) is by necessity ambiguous and that Treasury Regulation § 1.904(f)-2(d)(1) requires it to treat all its gain as foreign-source income. In combination with the section 904(a) formula we have already discussed, this view results in Liberty Global being allowed foreign tax credits totaling more than $240 million for 2010, permitting it to offset U.S. tax on gain that, absent the proposed recharacterization, would have been U.S.-source.

Notably, Liberty Global makes no attempt to explain why, in a rule that it agrees was adopted "to prevent a taxpayer from offsetting U.S.-source income in one year, then claiming foreign tax credits on positive foreign-source income in a subsequent year," Pet'r's Opening Br. 9–10, Congress would have provided for either one of these rather remarkable results. Indeed, it seems to acknowledge the absence of any potential rationale in its briefing. Pet'r's Opening Br. 23 ("[Liberty Global] acknowledges that this results in no tax on approximately $2.8 billion of income that would otherwise be taxed under other provisions of the Code. . . . However, 'the best evidence of Congress's intent is the statutory text.'" (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012))). The Court agrees that policy arguments cannot override clear text. *See United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023) ("Nor do we need to address any of the parties' policy arguments, which 'cannot supersede the clear statutory text.'" (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016))). But we disagree with Liberty Global's reading of the text. We take its two arguments in turn.

A.    *Section 904(f)(3) Does Not Cap Liberty Global's Recognized Gain.*

Liberty Global first argues that section 904(f)(3)(A)(i) served to limit the gain it recognized on the stock sale to $474,372,166—i.e., the

---

[12] The parties appear to disagree about whether, if Liberty Global were to prevail on either of its arguments, amounts effecting OFL recapture under section 904(f)(3) could also be recharacterized as dividends under section 1248, essentially performing double duty. Because we reject both of Liberty Global's arguments, this dispute does not affect the outcome of the case, and we do not address it further.

amount of its OFL balance. "As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). And as the Supreme Court has explained:

> In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where . . . that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

In 2010, section 904(f)(3)(A) read the same as it did following the passage of the Tax Reform Act of 1976. In relevant part, section 904(f)(3)(A)(i) says that upon the disposition of certain property,

> the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year . . . .

In other words, when a taxpayer disposes of the right kind of property, the taxpayer, notwithstanding any other provision of chapter 1, is deemed to recognize foreign-source income in an amount sufficient to offset its remaining OFL, but only to the extent of the taxpayer's actual gain from the transaction.

As the quoted text demonstrates, section 904(f)(3)(A) mandates specific treatment for a portion of a taxpayer's gain from a disposition (i.e., an amount equal to the lesser of the taxpayer's remaining OFL and its actual gain). But the provision is silent as to the treatment of any gain beyond that amount.

The parties infer very different outcomes from this silence. The Commissioner posits that existing Code provisions continue to apply to the remaining gain, while Liberty Global contends that

section 904(f)(3)(A)(i) supplants all other Code sections, precluding the taxation of any gain beyond the amount it specifies. The statute provides a clear answer to this dispute, which we resolve in the Commissioner's favor.

To begin with, the Commissioner's interpretation adheres to the text of section 904(f)(3)(A)(i), which provides no instruction at all regarding amounts in excess of the gain necessary to recapture an OFL balance. Nor does that provision say that any amount from an applicable disposition is exempt from recognition. We take the statute at its word: If the text does not speak to the excess gain, then it does not control the treatment of that gain. Silence is insufficient to create a new exclusion. *Cf. Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (noting that "exclusions from income must be narrowly construed" (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in the judgment)). Instead, we read section 904(f)(3)(A)(i) as doing exactly what it purports to do regarding excess gain—nothing. And the provision's inaction leaves other applicable Code sections (here, sections 865, 1001, and 1248) to operate unimpeded.

Adopting Liberty Global's opposing interpretation would require us to infer a limiting principle that is not present in the statute's text. Specifically, we would need to read the provision as requiring gain recognition that is *limited to* the amount specified therein. But neither those words nor similar ones appear in section 904(f)(3), and we decline Liberty Global's invitation to add them. *See, e.g.*, *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

Liberty Global might counter that the statute mandates its preferred result by negative inference. In other words, in Liberty Global's view, because section 904(f)(3)(A) requires a taxpayer to recognize a specified amount of gain as taxable income, it must follow that the remaining gain need not be recognized. But what the statute actually says is that, with respect to the specified gain, "the taxpayer . . . *shall be deemed* to have received and recognized taxable income from sources without the United States." I.R.C. § 904(f)(3)(A)(i) (emphasis added). Thus, even if one were to accept an argument by negative inference, the more natural inference would be that there is no deeming with respect to the excess gain. Or, put differently, that existing Code provisions continue to apply with respect to the excess gain.

Importantly, our interpretation is far more consistent with the broader statutory scheme. *See West Virginia v. EPA,* 142 S. Ct. 2587, 2607 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989))). In order to apply section 904, generally a taxpayer must first elect to claim the foreign tax credit. *See* I.R.C. § 901(a). And, even when applying section 904, a taxpayer turns to subsection (f) only if it has an outstanding OFL balance, and to paragraph (f)(3) only if, in addition to having an outstanding OFL balance, it also disposes of qualifying foreign property. One would not expect such a narrow rule, helpfully titled "Recapture of overall foreign loss" and adopted to *limit* a taxpayer's foreign tax credit, to serve the dual function of exempting billions of dollars of gain from U.S. taxation. As the Supreme Court has said, "Congress does not 'hide elephants in mouseholes' by 'alter[ing] the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Sackett v. EPA*, 143 S. Ct. 1322, 1340 (2023) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Consider the following example, which illustrates the implications of Liberty Global's interpretation: Assume that, in the same tax year, taxpayer A and taxpayer B each sell 100% of their stock in separate CFCs.[13] Each taxpayer realizes $500 million of gain from its respective sale. Taxpayer A has a beginning OFL balance of $10, and taxpayer B has no OFL. Because taxpayer A has an OFL and made a qualified disposition of CFC stock, section 904(f)(3) would apply. Under our reading of that section, $10 of taxpayer A's gain would be recharacterized as foreign-source income and subject to the recapture rule in section 904(f)(1). I.R.C. § 904(f)(3). And that is where the reach of section 904(f)(3) would end. But, in Liberty Global's view, the mere fact that section 904(f)(3) applies also means that all of taxpayer A's remaining gain ($499,999,990) would not be recognized and would therefore be exempt from U.S. tax. By contrast, because taxpayer B had no OFL to implicate section 904(f)(3), all $500 million of its gain would be recognized and taxable. We see nothing in the statute, nor indeed in common sense, to support these drastically disparate results.

Liberty Global makes much of section 904(f)(3)(A)(i)'s prefatory language, which states that the provision applies "notwithstanding any

---

[13] For simplicity, we assume that there is no dividend recharacterization under section 1248 for either transaction.

other provision of this chapter." To Liberty Global, this text signals that section 904(f)(3) turns off all other recognition provisions. But Liberty Global overreads the text.

"In statutes, the word ['notwithstanding'] 'shows which provision prevails in the event of a clash.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 126–27 (2012)). On the facts before us, there is no conflict between section 904(f)(3) and section 1001 or any other provision requiring recognition. Rather, section 904(f)(3) operates to ensure the minimum amount of recognition necessary to recapture a taxpayer's OFL. It does not prevent recognition beyond the minimum amount and, as a result, does not conflict with provisions that require additional recognition. The text of section 904(f)(3)(A)(i) confirms this point, as Liberty Global itself appears to acknowledge in its brief:

> Indeed, the statute does refer to the "deem[ing]" of income and uses "fair market value" of property to measure income. That language makes more sense in the context of nonrecognition transactions; for recognition transactions, income would not be deemed, and income would be measured using [the] amount realized (or purchase price) rather than fair market value.

Pet'r's Opening Br. 31.

Section 904(f)(3) does, however, sometimes conflict with *nonrecognition* provisions (e.g., section 351). And it does sometimes conflict with sourcing rules (e.g., section 865), as in the case before us. And in those circumstances, the rule of section 904(f)(3) prevails over the conflicting rule elsewhere in the Code. In short, although the inclusion of "notwithstanding" in the statute makes perfect sense, it does not support Liberty Global's reading.

Liberty Global's argument that the Commissioner's and our interpretation of the statute impermissibly creates different rules for recognition and nonrecognition transactions fails for similar reasons. When it applies, section 904(f)(3) ensures an amount of recognition sufficient to recapture a taxpayer's OFL. This rule, by its nature, has different implications for recognition transactions, where no recharacterization is required to effect recapture (at least as to recognition), and nonrecognition transactions, where at least some recharacterization is required. Nothing about this result is

impermissible; rather, it reflects the statute operating as drafted. And this result is fully consistent with this Court's interpretation of section 904(f)(3) shortly after it was adopted. *See Hershey Foods Corp.*, 76 T.C. at 323 ("Section 904(f)(3) accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss."). Liberty Global's reading, on the other hand, would result in different recognition rules being applied to taxpayers with OFL balances and those without, giving the taxpayers with OFL balances much more beneficial tax treatment, as our example above illustrates. Moreover, as the Commissioner points out, Liberty Global's reading is internally inconsistent when it comes to recognition and nonrecognition transactions. *See* Resp't's Answering Br. 24–25 ("Under [Liberty Global's] interpretation, in the case of recognition transactions, taxpayers would be exempt from realizing and recognizing the excess gain, while, in the case of non-recognition transactions, the unrecognized portion of the gain would merely be deferred until the property is disposed of in a recognition transaction.").

In summary, we disagree that section 904(f)(3) exempts the excess gain from Liberty Global's sale of J:COM stock and decide this issue in the Commissioner's favor.

B.  *Treasury Regulation § 1.904(f)-2(d)(1) Does Not Permit Liberty Global to Treat All of Its Gain on the J:COM Stock Sale as Foreign-Source Income.*

Alternatively, Liberty Global argues that the statute is ambiguous and that, because of the ambiguity, Treasury Regulation § 1.904(f)-2(d)(1) applies to treat all of its gain on the J:COM stock sale as foreign-source income. If Liberty Global were correct, then any gain in excess of its remaining OFL balance, which would otherwise be U.S.-source income under section 865, would become foreign-source income. As a result, the numerator in its foreign tax credit computation under section 904(a) would increase, allowing it to use more than $240 million in additional foreign tax credits.

As we have already discussed, however, the statute is not ambiguous. By its plain terms, the statute directs a taxpayer to deem amounts necessary to recapture an OFL as recognized foreign-source taxable income. It does not speak to gain beyond that amount because it has no reason to. And silence in this instance, where other Code

provisions address the salient points, is not ambiguity; rather, section 904(f)(3)(A)(i) leaves those other provisions to do their work.

Even assuming, however, for the sake of argument only, that the statute were ambiguous, we do not read the regulations as supplying the rule that Liberty Global attempts to draw from them.

We begin with the observation that the regulatory text Liberty Global relies on was adopted in 1987, long before Congress enacted the statutory provision applicable here.[14]  It would be unusual for a regulation to speak with specificity regarding an issue not implicated at all by the then-existing statute.  And, indeed, the regulation did not address sales of CFC stock.  Instead, paragraph (d)(1) at the time read the same as it did in 2010.  Specifically, it instructed taxpayers on what to do "[i]f [the] taxpayer disposes of property used or held for use predominantly without the United States in a trade or business."  Treas. Reg. § 1.904(f)-2(d)(1).  Needless to say, Liberty Global did not dispose of such property in 2010, calling into question the relevance of the regulation to the facts before us.

Even more problematic for Liberty Global's position, the regulations, like the statute, speak to the amount of gain necessary to effect the recapture of an OFL, nothing more.  This is evident from both the text of the specific rule on which Liberty Global relies and the overall regulatory context.

Starting with the former, the text of the relevant regulation reads as follows:

> Treas. Reg. § 1.904(f)-2(d)(1)  In general.  If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the

---

[14] We refer to section 904(f)(3)(D), which (as we have already noted) was added in 2004 to apply existing rules to certain dispositions of stock in a CFC.  *See* American Jobs Creation Act of 2004, § 895, 118 Stat. at 1647; *see also* Section 904 Portfolio at XII.E.4.e ("Until 2004, § 904(f)(3) did not apply to gain realized on the transfer of corporate stock held for investment purposes, which covered most types of stock ownership.").

same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section.

Liberty Global asks us to read paragraph (d)(1), and in particular paragraph (d)(1)(ii), of the regulation in isolation, a method prohibited by our caselaw.[15] But even if we were to take this approach, all it would tell us, in plain terms, is that when a taxpayer disposes of qualifying property (1) some amount of gain is recognized, (2) "such [recognized] gain will be treated as foreign source income," and (3) any OFL balance will be recaptured. Treas. Reg. § 1.904(f)-2(d)(1). It does not specify the amount of gain to be recognized nor, by implication, the amount of gain to be treated as foreign-source income. And it certainly does not say that it applies to amounts beyond those necessary for recapturing an OFL balance.

Moreover, when we read the regulation in the context of the greater regulatory scheme, its meaning becomes even more apparent. Treasury Regulation § 1.904(f)-2(d)(1) directs us to paragraph (a) for the portion of income to which it applies. Treasury Regulation § 1.904(f)-2(a) says that "[r]ecapture is accomplished by treating as United States source income *a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss*." (Emphasis added.) In other words, the regulation speaks only to the portion of gain necessary to recapture an OFL balance. *See also, e.g.*, Treas. Reg. § 1.904(f)-2(a) ("A taxpayer shall be required to recapture an overall foreign loss as provided in this section."); *id.* para. (b)(1) (explaining how to determine the amount of a taxpayer's "overall foreign loss subject to recapture"); *id.* para. (d)(4)(iii) ("The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section."); *id.* subpara. (7) (example 3). The broad sourcing rule that Liberty Global advances is nowhere to be found in the regulation.

Finally, it is worth noting that Liberty Global's preferred reading of the regulation is disfavored under general rules of interpretation. We

---

[15] We interpret regulations using canons of statutory construction, beginning with the text of the regulation, and giving effect to its plain meaning. *See, e.g.*, *Austin v. Commissioner*, 141 T.C. 551, 563 (2013). To determine a regulation's plain meaning, we look to its text as well as the text and design of the regulation as a whole. *See, e.g.*, *id.*

interpret regulations in a manner that avoids conflicts with the corresponding statute. *See, e.g.*, *Austin*, 141 T.C. at 563 (citing *Phillips Petroleum Co. & Affiliated Subs. v. Commissioner*, 97 T.C. 30, 35 (1991), *aff'd without published opinion*, 70 F.3d 1282 (10th Cir. 1995)). Because the statute applies only to amounts necessary to recapture an OFL balance, Liberty Global's reading of the regulation is directly at odds with the statutory text.[16]

In summary, section 904(f)(3)(A)(i) is not ambiguous, and Treasury Regulation § 1.904(f)-2(d)(1) does not support Liberty Global's position. We therefore find for the Commissioner on this issue as well.

III.    *Election to Deduct Foreign Taxes*

Because we decide against Liberty Global with respect to both its arguments under section 904(f)(3), it alternatively wishes to deduct its foreign taxes under section 164(a)(3), which it says will also cause the reversal of income recognized for its 2010 tax year under section 78.[17] The Commissioner has conceded that Liberty Global may deduct its foreign taxes in lieu of claiming a foreign tax credit. Therefore, we have no occasion to discuss the matter further and conclude that Liberty Global may deduct its foreign taxes and reverse the income recognized under section 78.

IV.    *Conclusion*

For the reasons stated above, we resolve the case as it relates to section 904(f)(3) in favor of the Commissioner, but conclude that Liberty Global may deduct its foreign taxes for 2010.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[16] Liberty Global argues that subsequent amendments to the regulation in 2012 support its interpretation. *See* T.D. 9595, 2012-30 I.R.B. 71, 71. But the fact that the regulation was later clarified does not change our reading of the plain text for the years at issue, for the reasons we have already discussed. Moreover, for the same reasons, we find unpersuasive Liberty Global's argument that the Commissioner is improperly attempting to apply here a regulatory rule that did not become effective until after 2010.

[17] For a general description of the objective and operation of section 78, see *Champion International Corp. v. Commissioner*, 81 T.C. 424, 426–27 & n.6 (1983).